UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BABAK KHOSHROU *et al.*,

    Plaintiffs,

  v.

ANTONY J. BLINKEN, *et al.*,

    Defendants.

Civil Action No. 22-2859 (CKK)

MEMORANDUM OPINION
(August 2, 2023)

In this action, Plaintiffs, citizens of Iran, seek declaratory relief ordering officials of the United States Department of Homeland Security ("DHS") and Department of State ("State Department") to render decisions on their F-1 student visa applications without further delay, pursuant to the Administrative Procedure Act's ("APA") bar on "unreasonabl[e] delay." 5 U.S.C. § 706(1).

Now pending before the Court is Defendants' [12] Motion to Dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). All parties agree that Plaintiffs Matin Alsadat Mostaan, Samaneh Mollaramezani, Mohammad Parvin, and Abasali Masoumi received final decisions on their visa applications and therefore their claims are now moot. Pls.' Opp'n at 1; Defs.' Mot. at 9. The only remaining Plaintiff is Babak Khoshrou. Upon review of the briefing,[1] the relevant legal authority, and the record as a whole, the Court shall

---

[1] The Court's consideration has focused on the following:
- Plaintiffs' Complaint ("Compl."), ECF No. 1;
- Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. 12;
- Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n"), ECF No. 13; and
- Defendants' Reply in Support of the Motion to Dismiss ("Defs.' Reply"), ECF No. 17.

1

**DENY AS MOOT** Defendants' Motion to Dismiss as to Plaintiffs Matin Alsadat Mostaan, Samaneh Mollaramezani, Mohammad Parvin, and Abasali Masoumi as their visa applications have been resolved and all parties agree their claims are moot; **GRANT** Defendants' Motion to Dismiss as to Plaintiff Babak Khoshrou; and **DISMISS** Plaintiffs' [1] Complaint in its entirety.

## I.   BACKGROUND

### A.   Procedural History

Plaintiffs initiated this lawsuit in September 2022. Through this action, Plaintiffs seek to compel the Government to decide their various requests for F-1 student visas. *See generally* Compl. Defendants filed the pending Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. Defs.' Mot. at 1.

This Motion is now fully briefed and ripe for the Court's review. In their opposition, Plaintiffs write that they agree that the claims of Plaintiffs Matin Alsadat Mostaan, Samaneh Mollaramezani, Mohammad Parvin, and Abasali Masoumi are now moot. Pls.' Opp'n at 1. Accordingly, as the Court will grant Defendants' Motion to Dismiss as to those claims, with Plaintiffs' consent, the Court addresses below only the procedural history of the applications of the remaining Plaintiff, Babak Khoshrou.

### B.   Visa Application of Plaintiff Babak Khoshrou

Plaintiff Babak Khoshrou is a citizen of Iran who seeks issuance of an F-1 student visa. Compl. ¶¶ 8, 31. Mr. Khoshrou was admitted to a master's program at Kettering University in December 2021 and intended to enroll in April 2022. *Id*. ¶ 32. Mr. Khoshrou completed the DS-

---

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

160 application form and attended an interview at the U.S. Embassy in Yerevan, Armenia on February 4, 2022.  *Id.* ¶ 33.  At the interview, the consular officer reviewing Mr. Khoshrou's documents informed him that his application was "refused under section 221(g) of the U.S. Immigration and Nationality Act" because it was "undergoing administrative processing."  *Id.* ¶ 35.  Later that same day, Mr. Khoshrou received an email request from the Embassy for additional personal information; he submitted answers to those questions on February 6, 2022.  *Id*. ¶¶ 36–37.  On February 7, 2022, the Embassy acknowledged receipt and alerted Mr. Khoshrou that his "administrative processing has started."  *Id.* ¶ 38.  Since then, Plaintiff's application has remained in administrative processing.  *Id.* ¶¶ 39–42.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (JDB); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

However, "the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of*

*Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (RMU). A court need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference "'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (RBW); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)). The court may also

consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III.  DISCUSSION

Defendants present various arguments for dismissal of Plaintiff's Complaint.  First, they argue that Plaintiffs lack standing as an unadmitted, nonresident non-citizen.  They next argue that certain Defendants have no role in adjudicating Mr. Khoshrou's requested visa and, therefore, he lacks standing as against them.  Defendants then argue that consular nonreviewability precludes judicial review.  Finally, they argue that even if those grounds do not foreclose relief, Plaintiffs' mandamus claims fail on the merits and therefore should be dismissed for failure to state a claim.  The Court now addresses these arguments in turn.

#### A.  Standing

To establish Article III standing, a plaintiff must demonstrate an injury in fact that is caused by the defendant's conduct and is redressable by the court.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

First, Defendants allege that Mr. Khoshrou lacks standing as an unadmitted, nonresident non-citizen.  *See* Defs.' Mot. at 4–9.  It is true that nonresidents lack standing to challenge *decisions* associated with their visa applications.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018) ("foreign nationals seeking admission have no constitutional right to entry"); *Kleindienst v. Mandel,* 408 U.S. 753, 762 (1972) ("[defendant] personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country").  However, unadmitted nonresidents do have standing to challenge *delays* in the processing of their visa applications.  *Shen v. Pompeo*, No. 20-1263 (ABJ), 2021 WL 1246025, at *6 (D.D.C. Mar. 24, 2021).  In the instant case, there has been no decision regarding Mr. Khoshrou's visa application, as evidenced by

5

repeated communications from the Embassy indicating that his visa remains in administrative processing.  Compl. ¶¶ 35, 38, 41.  Thus, Defendants' reliance on statutes and cases regarding denials of visa applications—as opposed to delays—is not convincing.

Further, Defendants assert that Mr. Khoshrou lacks standing because he does not have a legally protected interest, pointing to Supreme Court precedent that noncitizens have no right to a visa.  Defs.' Mot. at 9 (citing *Kleindienst*, 408 U.S. at 762, and *De Avilla v. Civiletti*, 643 F.2d 471, 477 (7th Cir. 1981) ("Visa applicants have no vested right in the issuance of visas")).  But Mr. Khoshrou is not arguing that he has a right to a visa.  Rather, he is asserting a right to a final decision on his visa application under the APA.  In cases similar to the one at hand, courts have held that plaintiffs who have not received a final decision on their visa application have suffered an injury in fact: "the failure to receive final decisions on their… applications within a reasonable period."  *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 282 (D.D.C. 2016) (GK).

Accordingly, the Court finds that Mr. Khoshrou has standing to bring this action.

**B. Improper Defendants**

Next, Defendants allege that certain named parties have no role in adjudicating Mr. Khoshrou's requested visa and, therefore, he lacks standing as against them.  Defs.' Mot. at 9. "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff."  *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996).

Defendants first argue that Mr. Khoshrou lacks standing to bring claims against the Secretary of Homeland Security and the Department of Homeland Security because Mr. Khoshrou is seeking a nonimmigrant visa in the F category that does not require an underlying visa petition.

Defs.' Mot. at 9.  In response, Plaintiffs do not specify how DHS could redress the delay in processing Mr. Khoshrou's visa, but instead merely suggest that it is plausible that obtaining a security clearance from DHS is the source of the delay.  Pl.s' Opp'n at 7.  However, the "sheer possibility" that a defendant played a role in the delayed processing of a visa is not adequate to establish standing.  *Nusrat v. Blinken*, No. 21-2801 (TJK), 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022).  It is unclear what relief DHS or the Secretary of Homeland Security could provide in the present case given that Mr. Khoshrou's visa application is with U.S. Embassy officials in Yerevan.  *See* Compl. ¶ 38; *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 9 (D.D.C. 2022) (RDM) ("Plaintiffs' petitions are pending adjudication before consular officials in the U.S. Embassy in Baghdad, and the Court is unaware of any mechanism through which DHS or USCIS can exert authority over the timing of that process.").  Therefore, the Court will dismiss the Complaint as against Defendants DHS and Secretary of Homeland Security.

Next, Defendants argue that the Department of State, Secretary of State, and Consul General for the U.S. Embassy should be dismissed as those parties cannot adjudicate a visa application.  Defs.' Mot. at 10.  In support, Defendants rely on the proposition that "consular officers [have] 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  *Id.* (citing *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. Jan. 22, 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999))).  However, Mr. Khoshrou is "not challenging a consular officer's adjudication of [his] ... visa application; [he is] challenging the… deprioritizing" of his application in the queue and the alleged delay.  *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 233 (D.D.C. 2021) (APM); *see also Al-Gharawy*, 617 F. Supp. 3d at 10 ("Control over a consular officer's visa *determination*… is not the same as control over the *timing* by which the consular

officer considers the applications presented to her."). The cases Defendants cite do not "require[] suit against a consular officer to challenge such policy decisions." *Id.* Courts in this jurisdiction reject the same argument that Defendants have raised here. *See, e.g.*, *id.*; *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) (RC). Therefore, the Court finds that the Secretary of State, the Department of State, and the Consul General for the U.S. Embassy are properly named defendants.

### C. Doctrine of Consular Non-Reviewability

Defendants next argue that Mr. Khoshrou's claims fail under the doctrine of consular non-reviewability. Defs.' Mot. at 11–15. This doctrine provides that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno*, 197 F.3d at 1159. The doctrine of consular non-reviewability derives from "the political nature of visa determinations and… the lack of any statute expressly authorizing judicial review of consular officers' actions." *Id.* The scope of the doctrine also aligns with Congress's decision to commit the adjudication of visa applications exclusively to consular officers. *See* 8 U.S.C. §§ 1201(a) & (g); *see also* 8 U.S.C. § 1361.

For nearly a century, courts in this jurisdiction have applied the doctrine of consular non-reviewability and "refused to review visa decisions of consular officials." *Saavedra Bruno*, 197 F.3d at 1159–60 (collecting cases). The United States Court of Appeals for the District of Columbia Circuit recently reaffirmed that the doctrine of "[c]onsular non-reviewability shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest.*, 985 F.3d at 1024. However, courts of this jurisdiction have held that the doctrine does not apply where "plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'" *Didban v. Pompeo,* 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (CRC) (quoting *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the*

*United States v. Pompeo*, No. 18-01388 (TSC), 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019)). This includes where a visa application remains in administrative processing. *See, e.g., id.* at 172, 174; *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020) (ABJ) (refusing to apply the consular non-reviewability doctrine where the "visa application remains in administrative processing" where the government actively seeks additional information from the applicant); *Nine Iraqi Allies*, 168 F. Supp. 3d at 290 (holding that the consular non-reviewability doctrine does not apply where the applicant's tracker status remains in administrative processing); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d at 11–17 (collecting cases and holding the same).

Here, the doctrine of consular non-reviewability does not preclude the Court from reviewing the adjudication of Mr. Khoshrou's visa application as it remains in administrative processing. On February 4, 2022, the consular officer who reviewed Mr. Khoshrou's documents alerted him that his application was "refused under section 221(g) of the U.S. Immigration and Nationality Act" because it was "underdoing administrative processing." Compl. ¶ 35. After Mr. Khoshrou submitted additional personal information per the Embassy's request on February 4, 2022, the Embassy informed him that his "administrative processing has started." *Id.* at ¶ 38. Further, in response to Mr. Khoshrou's multiple requests for status updates, the Embassy informed Mr. Khoshrou that his administrative processing was "still ongoing." *Id.* at ¶ 41. As in other cases where courts have deemed the consular non-reviewability doctrine to not apply, Mr. Khoshrou's application clearly remains in administrative processing per the express language of the consular officials. Accordingly, the Court holds that the consular non-reviewability doctrine does not bar judicial review of Mr. Khoshrou's claims.

### D. Unreasonable Delay

Finally, Defendants argue that even if the grounds argued above do not foreclose relief,

Plaintiffs' mandamus claims fail on the merits and therefore should be dismissed for failure to state a claim. Defs.' Mot. at 16. Mr. Khoshrou insists, *see* Pls.' Opp'n at 14, that Defendants have not adjudicated his application "within a reasonable time" as required by the Administrative Procedure Act, 5 U.S.C. § 555(b), and that the Court must "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). Although a court may order an agency "to perform a [mandatory] act, [i.e.,] to take action upon a matter," a court may not decide "how [the agency] shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).

To determine whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," courts apply the familiar "*TRAC*" factors laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (RJL) (applying *TRAC* factors to claim for mandamus relief). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or

years beyond which agency inaction is presumed to be unlawful, but will depend in large part… upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102.

1. ***TRAC* Factors One and Two**

The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The inquiry centers on "whether the agency's response time… is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB). Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department to adjudicate and re-adjudicate visa applications, *TRAC* factor two is inapplicable. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka,* 246 F. Supp. at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to the review of visa petitions by adjudicating applications in the order they were filed. *See, e.g., Muvvala v. Wolf*, No. 20-02423 (CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). Courts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether that "first-in, first-out" rule is, in fact, being applied.

Plaintiff Khoshrou already had his interview in February 2022 and his visa application was

refused; since sending additional information shortly after his interview, his application remains in administrative processing. Compl. ¶¶ 33–42. Plaintiffs argue that this delay—approximately seven months at the time of the filing of Plaintiff's Complaint, ten months at the time of the filing of Plaintiff's response brief, and now almost eighteen months—is unreasonable. Pls.' Opp'n at 18.

First, Plaintiffs cite an email from the U.S. Embassy in Islamabad that stated "[m]ost administrative processing is resolved within 60 to 90 days of the visa interview." Pls.' Opp'n at 18 (citing Compl. Ex. 7). Plaintiffs argue that Mr. Khoshrou's application has now been pending more than five times that period, which "objectively suggest[s] an unreasonable delay." *Id.* However, this argument is unavailing for two key reasons. First, as Plaintiffs themselves acknowledge, the very next sentence of that email states that "[t]he timing will vary," *id.* (citing Compl. Ex. 7), indicating that the sixty-to-ninety day time frame is aspirational, not mandatory, and, in this way, cannot be used as a meaningful benchmark. Second, the sixty-to-ninety day timeline that Plaintiff references was communicated by a different consular post than the one at which Mr. Khoshrou's application is pending and, therefore, is of limited use. *See Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (JEB) (holding the same).

Additionally, courts in this jurisdiction routinely find that delays of numerous years are not unreasonable. *See, e.g.*, *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-0402 (RJL), 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of forty-four months not unreasonable); *Varghese v. Blinken*, No. 21-2597 (CRC), 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing

alone"); *Arab v. Blinken*, No. 21-1852 (BAH), 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (ruling that a thirty-month delay was not unreasonable); *see also Yavari v. Pompeo*, No. 2:19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."). The time period for which Mr. Khoshrou's application has been in administrative processing is well within the bounds of that which other courts have found reasonable.

Next, Plaintiffs argue that the delay shows Defendants' failure to process applications in accordance with the first-in, first-out methodology. Pls.' Opp'n at 18. Plaintiffs offer no support for this theory in their argument about the first *TRAC* factor; however, when discussing *TRAC* factor four later in their brief, they present information that could be said to support this theory. There, Plaintiffs argue that it "clearly [] isn't the case" that "Defendants process cases in the order they are received," "as evidenced by the Yerevan Embassy's processing of later-interviewed F-1 visa applicants before Mr. Khoshrou." *Id.* at 20. Plaintiffs then present case numbers, facts, and names of other visa applicants from Iran who were interviewed for F-1 visas *after* Mr. Khoshrou's interview but had their visa applications adjudicated *before* him. *Id.* at 20–21. In reply, Defendants explain that relying on this data "is based on a false premise—that each visa application is the same, presenting the same challenge and complexity." Defs.' Reply at 15. The Court agrees; the fact that others were interviewed after but adjudicated before Mr. Khoshrou does not, without other information, mean that Defendants are not adhering to the first-in, first-out rule, as different applications may require different time and attention.

Plaintiffs also contend that the Department of State was bound by an additional "rule of reason" beyond the first-in, first-out rule. *See* Pls.' Opp'n at 18. They then point to an online news

13

announcement stating that "[i]nternational students are… among the Department of State's highest priorities," Compl. Ex. 31, and an email from the U.S. Embassy in Yerevan to Plaintiff stating that "[a]s a student, you are given a priority," Compl. Ex. 6.  However, there is "no compelling reason why the 'public facing announcements' of an agency should be understood to supply the granular substance of a rule of reason." *Milligan v. Blinken* (*Milligan II*), No. 20-2631 (JEB), 2021 WL 3931880, at *8 (D.D.C. Sept. 2, 2021).  Additionally, as Defendants point out, the online news announcement concerned "no longer in effect policies, which addressed the allocation of consular services during the pandemic," Defs.' Reply at 11; Plaintiffs even admit that this statement was made during the COVID-19 pandemic, Pls.' Opp'n at 17.  Even if the prioritization of students was to be considered a rule of reason, Mr. Khoshrou's wait would still not be unreasonable, as Plaintiff has not provided any support for the idea that his F-1 student application was not given such priority.  Furthermore, courts in this Circuit have found similar—and even longer—delays in F-1 visa applications not to be unreasonable.  *See, e.g.*, *Shen v. Pompeo*, No. 20-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (finding delay of twenty-one months in adjudicating F-1 visa not unreasonable); *Rahman v. Blinken*, No. 22-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (finding delay of eleven months in adjudicating F-1 visa not unreasonable).

Finally, Plaintiffs argue that because Mr. Khoshrou seeks a *nonimmigrant* visa, the delay should be distinguished from cases addressing *immigrant* visas. Pls.' Opp'n at 16.  As Plaintiffs explain, Mr. Khoshrou's visa is inherently time-sensitive, because opportunities to study in the United States are fleeting.  *Id.* at 16–17.  Yet Plaintiffs do not offer any legal authority for the proposition that being exceptionally time-sensitive makes it distinguishable from other types of visa cases and therefore necessitates a stricter rule of reason.  *Cf. Sawahreh*, 630 F. Supp. 3d at 162; *Shen*, 2021 WL 1246025, at *8.  As other courts have held, "whether or not the type or length

14

of [Plaintiff's] visa makes his application more time sensitive than [other visa applications] is not for Plaintiff or this Court to decide," but rather is "exactly the kind of question within the purview of the wide discretion in immigration processing that Congress has given Defendants." *Sawahreh*, 630 F. Supp. 3 at 162–63; *see also Shen*, 2021 WL 1246025, at *8.

In sum, the Court finds that the first and second *TRAC* factors do not lend credence to Plaintiff Khoshrou's claim.

### 2. *TRAC* Factor Four

Next, *TRAC* factor four requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Defendants contend that this factor weighs heavily in their favor, Defs.' Mot. at 20, while Plaintiffs argue the opposite, Pls.' Opp'n at 20–21. As was noted above, Plaintiffs point to various other visa applicants who were interviewed after but processed before Mr. Khoshrou. *Id.* at 21. They claim that this shows "[e]ither he is the one being prejudiced by Defendants' processing other cases before his or there is no orderly processing queue in the first place." *Id.*

First, as the Court discussed previously, the fact that others were interviewed after and processed before Mr. Khoshrou does not necessarily lead to the conclusions that Plaintiffs draw, as different visa applications vary in complexity. Additionally, the relief Mr. Khoshrou seeks—the prompt adjudication of his visa application, *see* Compl. at 29—would mean that others waiting for adjudication would be displaced, which is exactly what factor four counsels against: a "reorder a queue of applicants seeking adjudication," *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (BAH).

The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay," even "refus[ing] to grant relief when all

the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." *Mashpee Wampanaoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications"). Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76. Courts in this jurisdiction, including *this* Court, routinely decline to grant relief that would place one prospective visa applicant ahead of others. *See, e.g.*, *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. USCIS*, No. 20-3419 (RDM), 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020); *Dehghanighanatghestani v. Mesquita*, No. 22-2595 (CKK) 2022 WL 4379061, at *7 (D.D.C. Sept. 22, 2022); *Pushkar v Blinken*, No. 21-2297, 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021) (CKK); *Desai v. USCIS*, No. 20-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Manzoor v. USCIS*, No. 21-2126 (CKK), 2022 WL 1316427, at *5–*6 (D.D.C. May 3, 2022). The Court will now do the same here, finding that the fourth *TRAC* factor weighs against Plaintiffs.

### 3. *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiff's interests, health, and welfare. *Ghadami,* 2020 WL 1308376, at *9.

Mr. Khoshrou alleges that the delay in processing his F-1 visa has significantly disrupted his life by jeopardizing his ability to pursue his master's degree. Compl. ¶ 46. Plaintiffs explain

that this "colors every aspect of his life," including making him question whether he should change career paths, abandon higher education plans, relocate, and more. Pls.' Opp'n at 22. The Court finds that factor five—regarding Plaintiff's interests—weighs in his favor, as Mr. Khoshrou has demonstrated he is suffering real hardships related to this uncertain educational and professional future. *Cf. Shen*, 2021 WL 1246025, at *8; *Rahman*, 2023 WL 196428, at *4.

However, Plaintiffs have failed to plead plausible allegations of harm to Mr. Khoshrou's health and welfare, *cf. Shen*, 2021 WL 1246025, at *8, that are present in other cases in which courts have weighed factor three in a plaintiff's favor, *see, e.g., Ghadami*, 2020 WL 1308376, at *9 (weighing third and fifth TRAC factors in favor of visa applicant who alleged that he was "irrevocably harmed" by separation from his children and wife due to government's delay in rendering a decision on whether he was entitled to waiver of immigration restrictions in Presidential Proclamation 9645); *Didban*, 435 F. Supp. 3d at 177 (finding plaintiffs' interests in having their waiver application adjudicated were "undeniably significant" because they had "to endure a prolonged and indefinite separation, thereby forcing them to delay beginning their life as a married coupled"). While the Court recognizes that Mr. Khoshrou has an interest in swift adjudication of his visa application, "so too do many others facing similar circumstances." *Palakuru*, 521 F. Supp. 3d at 53.

As such, the third and fifth factors, on balance, do not weigh in favor of either party.

**4.   *TRAC* Factor Six**

The sixth *TRAC* factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. The Court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, 20-3680 (RCL), 2021 WL 736810,

at *5 (D.D.C. Feb. 25, 2021).

In the instant case, Plaintiffs argue that "the fact that [Mr. Khoshrou's] case remains pending so far beyond the standard processing time presents at least 'the appearance of impropriety,' as does Defendants' processing of later-interviewed applications before his." Pls.' Opp'n at 22–23. Plaintiffs do, however, admit that this factor is "not as strong." *Id.* at 23.

The Court finds that Plaintiffs' allegations on this factor lack "factual content that allows the court to draw the reasonable inference" of any bad faith or impropriety to sway this factor in his favor. *Iqbal*, 556 U.S. at 678. Rather, Mr. Khoshrou fails to show that the delay is "nefarious or the result of ill will." *Ramirez*, 594 F. Supp. 3d at 95. As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Mr. Khoshrou, and therefore does not alter the Court's analysis. *See Palakuru*, 2021 WL 674162, at *6 (considering the sixth TRAC factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] [] processing times").

## IV. CONCLUSION

For the foregoing reasons, the Court shall **DENY AS MOOT** Defendants' Motion to Dismiss as to Plaintiffs Matin Alsadat Mostaan, Samaneh Mollaramezani, Mohammad Parvin, and Abasali Masoumi as their visa applications have been resolved and all parties agree their claims are moot; **GRANT** Defendants' Motion to Dismiss as to Plaintiff Babak Khoshrou; and **DISMISS** Plaintiffs' [1] Complaint in its entirety. An appropriate order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
